UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SUSIE ANNIE BALFOUR A/K/A                                   PLAINTIFF
SUSAN ANN BALFOUR

V.                                  CIVIL ACTION NO. 3:24-CV-93-KHJ-MTP

JACKSON HMA, LLC, et al.                                    DEFENDANTS

ORDER

Before the Court is Defendant Eric Lane Rushing, M.D.'s ("Dr. Rushing") [80] Motion for Summary Judgment and request for entry of final judgment under Rule 54(b).[1] For the following reasons, the Court grants the motion and the request.

I.   Background

Plaintiff Susie Annie Balfour, also known as Susan Ann Balfour ("Balfour"), was in the custody of the Mississippi Department of Corrections ("MDOC") at the Central Mississippi Correctional Facility ("CMCF") for 33 years, before her release in December 2021. Am. Compl. [45] ¶¶ 1, 23, 55. Balfour has "Stage IV breast cancer which has metastasized and is now present in her lymph nodes, bones, and liver," which she believes was caused by "clean[ing] the prison with chemicals known to cause, or to contribute to causing, breast and other cancers without any protective equipment." *Id.* ¶¶ 23–24. Balfour claims that "suspicious masses" in her

---

[1] Defendant Jackson HMA, LLC d/b/a Merit Health Central ("Merit Health Central") joins in the [80] Motion for Summary Judgment. Joinder of Def. [86]. Because "Dr. Rushing is an employee and/or agent of Jackson HMA," the "disposition of the claim(s) as to Dr. Rushing would also require the disposition of any claim(s) against Jackson HMA which is based on Dr. Rushing's alleged actions or omissions." *Id.* ¶¶ 3, 5.

breasts were "outright ignored," that she was never informed of their presence, and that she was never referred for "additional diagnostic examinations and/or procedures to confirm or deny the presence of breast cancer." *Id.* ¶ 24.

Balfour asserts that the "failure to timely and accurately diagnose [her] breast cancer" allowed years to pass without life-saving treatment. *Id.* Now "terminal," she alleges that "had the [d]efendants taken her repeated requests for medical care seriously and conducted timely follow-up examinations and testing," her prognosis "would be more favorable." *Id.* ¶ 25. Balfour ultimately claims that "[d]efendants disregarded her requests, misled her into believing that her mammograms were negative for cancer, and denied her additional diagnostic testing and/or treatment." *Id.*

Throughout the time encompassing this claim, Dr. Rushing was an employee and/or agent of Wexford, VitalCore, Centurion, and Merit Health Central—all named Defendants who were "responsible for providing medical treatment and care to individuals in the custody of the [MDOC]." *Id.* ¶¶ 2–5, 10, 151. On January 2, 2013, Dr. Rushing first interpreted Balfour's bilaterial mammogram. *Id.* ¶ 43. According to Dr. Rushing's documentation, Balfour's mammogram showed "benign-appearing calcifications," and he recommended "further diagnostic testing to 'correlat[e] with physical findings' and 'exclude palpable lesions.'" *Id.* (first quoting Radiology Results [92-1]; and then quoting Composite Ex. 1 [97-1] at 1). Dr. Rushing also recommended that Balfour "follow-up with annual mammograms." [45] ¶ 43.

2

On February 3, 2016, Dr. Rushing reviewed a mammogram of Balfour's right breast. *Id.* ¶ 45. This mammogram reflected "fairly uniform rounded calcifications," which had "increased in number as compared to the previous study" conducted three years earlier, as mentioned above. *Id.* (first quoting Radiology Results [92-2] at 1; and then quoting [97-1] at 5). After this discovery, Dr. Rushing "recommended . . . Balfour undergo follow-up mammograms every six (6) months 'to assure lack of suspicious change.'" *Id.* ¶¶ 45–46 (first quoting [92-2] at 1; and then quoting [97-1] at 5). This is the extent of Balfour's claims about her interactions with Dr. Rushing in both her [1] Complaint and her [45] Amended Complaint. *See* [80] ¶ 2; Dr. Rushing's Mem. Supp. Summ. J. [81] ¶¶ 1–5. Balfour states that after both mammograms, "the Wexford Defendants and the subsequent Centurion Defendants refused to provide" Balfour with the recommended follow-ups. [45] ¶ 46. And as a result, she filed suit on February 14, 2024, claiming violations of her Eighth Amendment rights, medical malpractice, and more. [1] ¶¶ 60–115; [45] ¶¶ 59–166.

Dr. Rushing now moves for summary judgment. He denies all allegations of medical negligence against him, claiming that they are time-barred by the applicable, undisputed statutes of limitations and repose. [80] ¶ 1; *see also* Miss. Code Ann. § 15-1-36.[2] Dr. Rushing also asks that the Court grant him a Rule 54(b) final judgment, claiming "[t]here is no reason to keep [him] involved with all of the

---

[2] In Mississippi, medical negligence claims must be "filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." Miss. Code Ann. § 15-1-36(2). And "in no event" may a claim be brought "more than seven (7) years after the alleged act, omission or neglect occurred." *Id.*

3

other defendants in this case considering any involvement he had in . . . Balfour's care was well over 7 years ago." [80] ¶ 6; *see also* Fed. R. Civ. P. 54(b) ("[W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."). As Dr. Rushing's employer, Merit Health Central joins in the [80] Motion. *See* [86].

Balfour responds, raising the statutory tolling provision of fraudulent concealment, which she claims can be "*reasonably inferred.*" [93] at 3 (emphasis added). She argues that Dr. Rushing's actions—such as failing to adhere to applicable standards of care in drafting his radiological opinions—"constitute fraudulent concealment which excepts [Balfour's] claims from the . . . statute of repose" set forth in Mississippi Code Annotated section 15-1-36. *Id.* at 3, 5. In the absence of a genuine issue of material fact, the Court grants both the motion and the request.

II.   Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (cleaned up). The Court "view[s] all the facts and draw[s] all reasonable inferences in favor of

4

the nonmoving party." *Cory v. Stewart*, 103 F.4th 1067, 1078 (5th Cir. 2024) (per curiam) (cleaned up). But "unsubstantiated assertions are not competent summary judgment evidence." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

In ruling on a motion for summary judgment, a judge does not "weigh the evidence and determine the truth of the matter"; she only determines "whether there is a genuine issue for trial." *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The party moving for summary judgment need only show "an absence of evidentiary support in the record" for any issue that the non-movant must prove at trial. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (cleaned up). Once the movant meets this requirement, "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Id.*

"[F]raud will not be inferred or presumed . . . ." *EDW Invs., LLC v. Barnett*, 149 So. 3d 489, 493 (Miss. 2014) (cleaned up); *see also Herbert v. Herbert*, 374 So. 3d 562, 575 (Miss. Ct. App. Apr. 25, 2023) (citing *Brabham v. Brabham*, 483 So. 2d 341, 342 (Miss. 1986)). Rather, "[w]hen a plaintiff uses fraudulent concealment to toll the statute of limitations, [she] must prove the necessary elements of fraudulent concealment in order to defeat a defendant's motion for summary judgment." *Trustmark Nat'l Bank v. Meador*, 81 So. 3d 1112, 1119 (Miss. 2012) (cleaned up). A successful fraudulent concealment claim requires the plaintiff to demonstrate "(1) that [the] defendant[] acted affirmatively to conceal the fraud; and (2) that [the]

5

plaintiff[] could not have discovered the alleged fraud with the exercise of due diligence." *Alexander v. Wyeth*, 897 F. Supp. 2d 489, 492 (S.D. Miss. Oct. 11, 2012) (cleaned up); *see also Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000) ("[T]here must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim." (cleaned up)); Miss. Code Ann. § 15-1-67. "The requirement of proof of an affirmative act refers . . . to a [separate,] *subsequent* affirmative act of concealment." *Alexander*, 897 F. Supp. 2d at 493 (cleaned up); *see also Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 510–11 (5th Cir. 2008). This means that the concealment must occur after the transactions at issue. *See Liddell v. First Fam. Fin. Servs., Inc.*, 146 F. App'x 748, 750 n.8 (5th Cir. 2005).

III.    Analysis

Dr. Rushing contends that the seven-year statute of repose bars Balfour's claims because "[t]he alleged negligent interpretation claims . . . Balfour asserts against Dr. Rushing both occurred more than 7 years and 60 days" ago.[3] [80] ¶¶ 3–5. It is undisputed that this statute applies and that Balfour filed her [1] Complaint after the seven-year limit had passed. But in her [93] Memorandum in Opposition, Balfour raises the one relevant exception to the statute—for the first time.

> In the event the cause of action shall have been fraudulently concealed from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence should have been, first known or discovered.

---

[3] The added 60 days assumes that Balfour sent a notice of intent, as required under Mississippi law. This notice extends the time to file a suit by 60 days. [80] at 2 n.1; *see also* Miss. Code Ann. § 15-1-36(15).

Miss. Code Ann. § 15-1-36(2)(b).

> Balfour believes that Dr. Rushing
>
> knew or should have known that . . . [she] required further diagnostic testing and failed to recommend such testing due to, as a result of, or in compliance with the policies and procedures of [Wexford, Centurion, and/or VitalCore], which discouraged outpatient care and treatment by the medical providers and/or [the] facilities those entities contracted with and/or employed.

[93] at 2. Following Dr. Rushing's initial examination of Balfour in January 2013, she further claims that when Balfour "presented to Dr. Rushing for a mammogram on February 3, 2016, he knew . . . that she had not been receiving annual mammograms[,] and yet he still did nothing." *Id.*

Reaching only the first element of fraudulent concealment, the Court finds no evidence of a subsequent affirmative act of concealment by Dr. Rushing. After both of his encounters with Balfour, Dr. Rushing drafted medical records of his findings. *See* [92-1]; [92-2]; [97-1] at 1–8. Dr. Rushing noted after their first encounter on January 2, 2013, that "[n]odularity is present in each breast. Dense tissue is demonstrated. Benign-appearing calcifications are noted. There has been no change [since] the prior study.[4] Correlation with physical findings is recommended to exclude palpable lesions. Yearly follow-up is recommended[,] and a follow up letter will be scheduled." [92-1]; [97-1] at 1. After their second encounter, three years later, on February 3, 2016, Dr. Rushing noted:

> Magnification views of microcalcifications in the right breast were obtained. A group of fairly uniform rounded calcifications is present in

---

[4] A prior mammogram dated June 1, 2011, was available for comparison. [92-1]; [97-1] at 1.

7

> the lateral right breast. These have increased in number as compared to [the] previous study of 3 years earlier[,] but there [are] other similar-appearing calcification[s] present and calcifications are favored to be benign. Short-term follow[-]up of the right breast in 6 months is recommended to assure lack of suspicious change.
>
> IMPRESSION . . . Probably Benign Finding—Short Interval Follow-Up Suggested.

[97-1] at 5.

Without dispute, the record reflects that "Balfour's healthcare providers during her incarceration[, Irish Harris and Gloria Perry,] were provided copies of the mammogram reports from Dr. Rushing[,] which specifically set forth the recommendations regarding future mammograms." [97] ¶ 4; Merit Health Central's Mem. in Supp. [96] at 3; Dr. Rushing's Reply [98] at 2; Excerpted Records [98-1] at 8. Not only were these records drafted to contain Dr. Rushing's findings on the current state of Balfour's breast cancer with suggestions for additional care, but these records were also communicated through their transmission to Balfour's direct medical caretakers. *See* Decl. of Pasillas [96-1] ¶¶ 4–9; *id.* at 3–4. Dr. Rushing noted in his most recent report that newly formed calcifications were present, and "probably" benign, yet he still explicitly recommended a short-term follow-up to "assure [the] lack of suspicious change." [97-1] at 5. This does not amount to a subsequent act of concealment. And this is the extent of the interactions alleged between Dr. Rushing and Balfour.

Through her retention of Dr. Muhammad Afzal Riaz ("Dr. Riaz"), a breast radiologist, Balfour tries to convince the Court otherwise. [93] at 3. Balfour claims:

8

> Dr. Riaz is expected to testify that Dr. Rushing's apparent lack of concern for the significant increase in number of calcifications between the 2013 and 2016 mammograms, as well as the vague language he used to describe the alleged "calcifications" without referring to their specific features, indicates that Dr. Rushing drafted his opinion in a manner which would allow Defendants Wexford, Centurion, and VitalCore to deny Ms. Balfour additional more costly procedures, such as a mastectomy, while her cancer developed and spread throughout her body.

*Id.* But this argument lacks merit. Balfour may not rely on the anticipated expert testimony of Dr. Riaz because it does not procedurally adhere to Rule 56(d)'s affidavit requirement. *See* Fed. R. Civ. P. 56(d). "[U]nder Rule 56(d), deferring summary judgment and ordering discovery is appropriate only if the 'nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'" *Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(d)). "[C]onclusory assertions that counsel anticipates sufficient expert testimony will be forthcoming are insufficient." *Rubi v. BP Expl. & Prod., Inc.*, No. 1:19-CV-481, 2022 WL 275517, at *7 (S.D. Miss. Jan. 28, 2022) (cleaned up). And "[a] party cannot evade summary judgment simply by arguing that additional discovery is needed, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Id.* (quoting *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006) (cleaned up)). Balfour's failure to submit either sworn expert testimony or an affidavit under Rule 56(d) leads the Court to grant summary judgment.

Citing 42 U.S.C. § 263b, Balfour also asserts that Dr. Rushing and Merit Health Central fraudulently concealed medical malpractice by "failing to send [her]

a summary of each radiological report 'in terms easily understood by a lay person,'" as required by the Mammography Quality Standards Act ("MQSA"). [93] at 5. This argument also is meritless because Balfour has the burden to prove an affirmative act of concealment. But she has not pointed to any evidence in the record that Dr. Rushing or Merit Health Central violated the MQSA, much less that they did so to conceal Balfour's cause of action. Her "unsubstantiated assertions" about MQSA violations "are not competent summary judgment evidence." *Ragas*, 136 F.3d at 458.

Moreover, the record affirmatively shows that Dr. Rushing and Merit Health Central did comply with the statute. First, the MQSA requires that a "facility must assure the preparation of a written report of the results of any mammography examination signed by the interpreting physician." 42 U.S.C. § 263b(f)(1)(G)(ii)(I). Dr. Rushing prepared and signed a written report after both of Balfour's mammograms. *See* [92-1]; [92-2]; [97-1]. Second, a summary of the mammography report must be "sent directly to the patient in terms easily understood by a lay person." 42 U.S.C. § 263b(f)(1)(G)(ii)(IV). Merit Health Central provided "letters[,] which were mailed to . . . Balfour following [her] mammograms performed at the hospital." [96-1] ¶ 6; *id.* at 3–4. Those letters stated: "The results of your exam indicate the need for additional evaluation of your right breast at this time," and "[t]he results of your exam show an area that is probably non-cancerous, however we would like you to return for a follow-up study of your right breast . . . ." *Id.* at 3–4. Because these letters were prepared and sent to Balfour in terms easily

understood by a lay person, this argument fails on its merits, as well. 42 U.S.C. § 263b(f)(1)(G)(ii)(IV).

Taken one step further, Balfour fails to provide the Court with any competent summary judgment evidence showing that Dr. Rushing knew his documentation was false, deceitful, or "vague" when written or that his objective was to comply with the alleged ill-intentions of Defendants Wexford, Centurion, and VitalCore. *See* [93] at 2–3. Simply put, Balfour's burden is "to prove that [Dr. Rushing] actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong from [her]." *Smith v. Palafox*, 728 F. App'x 270, 275 (5th Cir. 2018) (per curiam) (cleaned up). Balfour makes no such showing. Her unsubstantiated generalities, such as Dr. Rushing's alleged medical negligence, which can be "reasonably inferred" from his "failures and deviations," do not satisfy her summary judgment burden. [92] ¶ 2; [93] at 2–3; *see also Barnett*, 149 So. 3d at 493 ("[F]raud will not be inferred or presumed . . . .") (cleaned up).

Balfour cannot invoke the statutory tolling provision of fraudulent concealment because of her failure to produce evidence of an affirmative act of concealment by Dr. Rushing. Summary judgment is therefore proper because there is no genuine issue of material fact, and Balfour's claims against Dr. Rushing are time-barred.

IV. Conclusion

This Court has considered all arguments. Those not addressed in this Order would not have changed the outcome of this Court's decision. For the reasons stated,

this Court GRANTS Dr. Rushing's [80] Motion for Summary Judgment, and all claims against him and the related, vicarious-liability claims against Merit Health Central are DISMISSED WITH PREJUDICE.

The Court also finds that this action presents more than one claim for relief and involves multiple parties. The Court expressly determines that there is no just reason for delay in directing entry of final judgment as to all claims asserted against Dr. Rushing and the related, vicarious-liability claims against Merit Health Central. Pursuant to Federal Rule of Civil Procedure 54(b), the Court directs and ORDERS that a FINAL JUDGMENT is entered as to the claims asserted against Dr. Rushing and the related, vicarious-liability claims against Merit Health Central.

SO ORDERED, this 8th day of October, 2024.

s/ <i>Kristi H. Johnson</i><br>
UNITED STATES DISTRICT JUDGE