UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SUSIE ANNIE BALFOUR A/K/A                                                PLAINTIFF
SUSAN ANN BALFOUR

V.                                              CIVIL ACTION NO. 3:24-CV-93-KHJ-MTP

JACKSON HMA, LLC, et al.                                                DEFENDANTS

ORDER

Before the Court is Defendant Gloria Mangum Perry, M.D.'s ("Dr. Perry") [109] Motion for Summary Judgment. For the following reasons, the Court grants the motion.

I.   Background

Incorporating the background discussed in its [107] Order, the Court focuses on Dr. Perry's involvement in the case. *See* [107] at 1–2. Throughout the time encompassing this claim, Dr. Perry was allegedly an employee of Wexford, VitalCore, and Centurion—all named Defendants who were "responsible for providing medical treatment and care to individuals in the custody of the Mississippi Department of Corrections [("MDOC")]," like Plaintiff Susie Annie Balfour ("Balfour"). Am. Compl. [45] ¶¶ 3–6.

According to Balfour, Dr. Perry's primary interaction with her occurred on June 1, 2011, when "Balfour presented to [Dr. Perry], the MDOC Chief Medical

Officer . . . , for a bilateral mammogram." *Id.* ¶ 40.[1] Balfour claims that on that day, Dr. Derek Dyess ("Dr. Dyess"), another named defendant here, "interpreted [her] mammogram and found 'scattered benign appearing punctuate microcalcifications in both breasts,' but no 'significant interval changes or findings' suggesting malignancy." [45] ¶ 41. So then, "Dr. Dyess *and/or* Dr. Perry recommended a one-year follow-up screening." *Id.* (emphasis added).

Dr. Perry is not mentioned again in the [45] Amended Complaint until January 6, 2016, about five years later, when Balfour received another bilateral mammogram, which was also interpreted by Dr. Dyess. *Id.* ¶ 44. According to Dr. Dyess, "that mammogram revealed 'interval development of a cluster of microcalcifications at 8 o'clock in central right breast,' prompting him to recommend further diagnostic examination." *Id.* So, "Dr. Dyess *and/or* Dr. Perry recommended additional imaging evaluation and/or comparison with prior studies to rule out malignancy, as well as annual follow-up mammograms." *Id.* (emphasis added). But Balfour explains the Wexford, Centurion, and VitalCore Defendants failed to ensure timely, adequate care. *Id.* ¶¶ 40–57. This is the extent of Balfour's claims about her personal interactions with Dr. Perry in the operative [45] Amended Complaint.

Balfour brought suit on February 14, 2024, *see* Compl. [1], claiming violations of her Eighth Amendment rights and medical malpractice against Dr.

---

[1] As the MDOC Chief Medical Officer, Dr. Perry had contractual responsibilities of approving "special procedures or non-routine follow up" medical treatment. [45] ¶ 34, 38 (citation modified).

2

Perry and several other defendants. [45] ¶¶ 34, 38, 59–65, 75, 86, 97, 105–09.[2] She submits the defendants "responded to [her] serious medical condition with deliberate indifference," and they "callously disregarded the signs that [she] was suffering from a serious medical condition." *Id.* ¶ 58. In fact, she argues they "failed to order recommended diagnostic testing or refer [her] to an outside specialist," "consistently delayed [her] diagnosis and treatment," "failed to treat [her] symptoms despite her worsening condition," and allowed her cancer to spread, worsening her prognosis. *Id.*

Dr. Perry now moves for summary judgment, denying all allegations against her. *See* [109]. In the attached [109-1] Declaration,[3] Dr. Perry denies her employment beyond the MDOC, where she served as the Chief Medical Officer of the Office of Medical Compliance ("OMC"). [109-1] ¶¶ 3–4; [112] ¶¶ 3–4. She denies ever working for Wexford, Centurion, or VitalCore.[4] [112] ¶ 4.

Dr. Perry explains that the OMC "reviewed requests from treating physicians (employees of the third-party medical providers) for inmate specialty care (medical care with specialists outside of the prisons)." *Id.* ¶ 5. The OMC handled only "logistics, scheduling the appointments[,] and securing transportation and security for the offsite visit." *Id.* Neither Dr. Perry nor anyone working for the OMC made medical determinations. *Id.* ¶ 6. Dr. Perry elaborates:

---

[2] Balfour amended the [1] Complaint on May 13, 2024. *See* [45].

[3] On October 18, 2024, Dr. Perry filed an [112] Amended Declaration, as well.

[4] After resigning from MDOC, Dr. Perry went to work for VitalCore—where she is still currently employed. [109-1] ¶ 4; [112] ¶ 4.

3

> If [Balfour] needed a mammogram, that would be determined by the treating physician. Likewise, if [Balfour] needed a follow-up, or needed to be scheduled for another mammogram one year later, that would be determined by the treating physician. The OMC did not schedule specialty care treatment until a request was placed by the treating physician. [Balfour's] allegations that [Dr. Perry] or anyone with the OMC delayed in scheduling her mammograms are wrong.
>
> [Dr. Perry] never communicated with [Balfour]. [Dr. Perry] never provided medical care to [Balfour]. [Dr. Perry] never determined when [Balfour] should receive a mammogram or any follow-up. [Dr. Perry] never reviewed [Balfour's] medical records or the results of the mammograms, prior to this lawsuit. All medical treatment and determinations were provided by physicians and nurses with the third-party contractors, including Wexford, Centurion, and VitalCore.

*Id.* ¶¶ 6–7.

Dr. Perry acknowledges that "some of the mammogram reports listed [her] as [Balfour's] attending physician/contact." *Id.* ¶ 8. But she claims this was normal among some hospitals and doctors to list her name on inmate's medical records, "for no other reason other than [she] was the medical director of the OMC." *Id.* She admits "[t]hese documents are misleading as [she] did not provide treatment to inmates." *Id.* Because she "never once provided medical treatment to Balfour," Mem. Supp'g Mot. [110] at 1, she believes the Court should grant summary judgment in her favor.

To that end, Dr. Perry argues that she is entitled to qualified immunity. *Id.* at 5. She claims Balfour has failed to state a Section 1983 claim against her because she never provided any medical treatment to Balfour, and all of her actions toward Balfour were objectively reasonable—meaning she could not have violated Balfour's clearly established constitutional rights. *See id.* at 6–10.

4

Balfour responds, arguing that Dr. Perry's [109] Motion is "premature and denies [Balfour] a fair opportunity to conduct discovery." Resp. [115] at 2; *see also* Mem. Opp'n Mot. [116] at 6–9. She also attaches a [115-3] Rule 56(d) Affidavit, requesting time to conduct additional discovery to establish only Dr. Perry's deliberate indifference to her serious medical needs.

II.     Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (citation modified). The Court must "view all the facts and draw all reasonable inferences in favor of the nonmoving party." *Cory v. Stewart*, 103 F.4th 1067, 1078 (5th Cir. 2024) (per curiam) (citation modified).

In ruling on a motion for summary judgment, a judge does not "weigh the evidence and determine the truth of the matter" but determines only "whether there is a genuine issue for trial." *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The party moving for summary judgment need only show "an absence of evidentiary support in the record" for any issue that the nonmovant must prove at trial. *Bayle v. Allstate Ins.*, 615 F.3d 350, 355 (5th Cir. 2010) (citation modified). Once the movant

meets this requirement, "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Id.* And if the nonmovant fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, the Court must grant summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

The nonmovant cannot defeat summary judgment through "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (citation modified); *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A court may consider the entire record. *See* Fed. R. Civ. P. 56(c)(3). But "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citation modified).

III. Analysis

    A. Medical Malpractice

Balfour sues Dr. Perry for medical malpractice. [45] ¶¶ 105–09. To succeed on this claim, under Mississippi law, Balfour must show:

> (1) the existence of a duty by [Dr. Perry] to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant.

6

*Est. of Sanders v. United States*, 736 F.3d 430, 435–36 (5th Cir. 2013) (citation modified).

"Mississippi law does not permit recovery of damages because of mere diminishment of the chance of recovery." *Id.* at 436 (citation modified). In fact, "[r]ecovery is allowed only when the failure of the physician to render the required level of care results in the loss of a reasonable probability of substantial improvement of the plaintiff's condition." *Id.* at 436–37 (citation modified); *see also id.* at 437 ( "[T]he plaintiff must present evidence that proper treatment would lead to a greater than fifty . . . percent chance of a better result than was in fact obtained." (citation modified)).

In her [45] Amended Complaint, Balfour alleges Dr. Perry committed medical malpractice because she "had a duty to treat and care for [Balfour] with the same or similar diligence, skill, competency[,] and prudence as is practiced by minimally competent physicians who treat and diagnose breast cancer . . . ." [45] ¶ 106. Balfour claims Dr. Perry breached that duty by "carelessly and recklessly fail[ing] to provide adequate medical treatment and care to [her]." *Id.* ¶ 107. This inadequate treatment included Dr. Perry's proposed failure to "recognize, diagnose, and treat" Balfour's condition and failure to "refer, schedule, and/or perform" Balfour's mammograms and follow-up care. *Id.*

These allegations, however, do not establish the essential elements of a medical malpractice claim. In her [109-1] Declaration,[5] Dr. Perry states she never

---

[5] Under the "[n]ew Rule 56(c), added in 2010," a party may "support or dispute summary judgment through unsworn declarations, provided their contents can be

7

made medical determinations on behalf of Balfour, she never provided medical care to Balfour, and she never reviewed Balfour's medical records or the results of her mammograms. [109-1] ¶¶ 6–7; [112] ¶¶ 6–7. Simply, she maintains she never treated Balfour directly. *See* [112] ¶¶ 5–8.

And Balfour does not rebut this in her [116] Response. In fact, Balfour does not mention her medical malpractice claim at all. *See* [116].[6] Because there is no genuine dispute of material fact, the Court grants summary judgment on this claim.

B. Deliberate Indifference

Balfour also sues Dr. Perry under the Eighth Amendment. [45] ¶¶ 59–65. The Fifth Circuit has made clear that to prevail on an Eighth Amendment claim, a prisoner must "demonstrate that the alleged deprivation was objectively serious, exposing [her] to a substantial risk of serious harm and resulting in the denial of the minimal civilized measure of life's necessities." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citation modified). A prisoner must then prove that "the official possessed a subjectively culpable state of mind in that [she] exhibited deliberate indifference to serious medical needs." *Id.* (citation modified).

Deliberate indifference is an extremely high standard. *Id.* A prison official is found deliberately indifferent only if she "(1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable

---

presented in admissible form at trial." *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019).

[6] Balfour's failure to pursue this claim beyond her [45] Amended Complaint also constitutes abandonment of it. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006).

8

measures to abate it." *Id.* (citation modified). An inmate must show the official refused treatment, ignored complaints, intentionally mistreated, or engaged in similar misconduct "that would clearly evince a wanton disregard for any serious medical needs." *Id.* at 620–21. But "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

According to Dr. Perry and her [109-1] Declaration, she is entitled to summary judgment because she never communicated with Balfour, she never made medical determinations on behalf of Balfour, she never provided medical care to Balfour, and she never reviewed Balfour's medical records or the results of her mammograms. [109-1] ¶¶ 6–7; [112] ¶¶ 6–7; *see also id.* at 3. Her explicit argument is that she was never Balfour's "treating physician." *See* [112] ¶¶ 5–8.[7]

Thus far in the record, Balfour has failed to present sufficient evidence to show Dr. Perry's alleged deliberate indifference. First, she cannot establish that Dr. Perry was her treating physician, so she cannot show Dr. Perry intentionally treated her incorrectly or refused treatment overall. *See, e.g.*, [45] ¶¶ 41, 44 (listing "Dr. Dyess *and/or* Dr. Perry" as the physician(s) recommending Balfour's follow-up care, illustrating Balfour was unsure who held the responsibility to do so) (emphasis

---

[7] In *Stewart v. Murphy*, the Fifth Circuit affirmed the dismissal of the medical director of a state prison because he was "*not* one of [the plaintiff's] treating physicians." 174 F.3d 530, 536 (5th Cir. 1999). The medical director had "limited contact" with the plaintiff, and so the Court found there was "no material fact issue as to deliberate indifference." *Id.*

added); [109-1] ¶¶ 5–9; [112] ¶¶ 5–9; Reply [120] at 1–2; Composite Ex., Medical Records [120-1] through [120-7] (missing Dr. Perry's name, except for the mammogram reports); *see also* [116] at 2 ("[d]iscovery is essential to assess [Dr. Perry's] oversight role . . . and [is] *critical to determining whether* [Dr. Perry's] actions constitute . . . deliberate indifference" (emphasis added)).

She fails to provide evidence establishing Dr. Perry's "responsibility and/or authority regarding decisions concerning [the] course of medical treatment" because "such decisions are made by the onsite medical providers at each prison facility." *Allen v. Woodall*, No. 2:11-CV-209, 2013 WL 125928, at *5 (S.D. Miss. Jan. 9, 2013) (granting summary judgment to Dr. Perry in a Section 1983 action "according to [her] affidavit[]"). Balfour is also unable to establish that Dr. Perry had a culpable state of mind. Although Balfour claims Dr. Perry "knew or should have known that [Balfour] required further follow-up treatment and care," and "utilized the bureaucratic policies of [third-party employer Defendants] to deny [Balfour] *any* . . . basic follow-up and . . . to discourage her from continuing to seek such care," [45] ¶ 61 (emphasis added), the record reflects that Dr. Perry "*never denied* a request from Balfour's treating physicians for an outside mammogram." [120] at 3; *see also id.* at 8 ("*[A]ll* requests by Balfour's treating physicians for mammograms were approved by Dr. Perry or . . . those . . . under her in the OMC."). This alone reflects reasonable measures Dr. Perry took to fulfill her logistical obligations over Balfour's medical care; Dr. Perry never refused treatment. *See id.* at 8; *see also* Composite Ex. [120-1] through [120-7]. And Balfour's "[d]isagreement with [her] medical treatment does
10

not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

The Court is not convinced Dr. Perry was aware of and deliberately disregarded the risk of Balfour's worsening breast cancer prognosis. Balfour has failed to demonstrate that Dr. Perry exposed her to a substantial risk of serious harm, and she has not shown Dr. Perry's deliberate indifference to her serious medical needs.

C. Qualified Immunity

To develop her defense further, Dr. Perry asserts that qualified immunity squarely applies, and as such, her [109] Motion must be granted. *See* [110].

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam). It shields "all but the plainly incompetent or those who knowingly violate the law." *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (citation modified).

The Fifth Circuit applies a two-step inquiry to determine whether qualified immunity applies. *See Winzer v. Kaufam County*, 916 F.3d 464, 473 (5th Cir. 2019). So Balfour must establish (1) that Dr. Perry violated her statutory or constitutional right and (2) that the right was clearly established at the time of the relevant conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). And "[f]or a right to be clearly established, the contours of the right must be sufficiently clear that a

11

reasonable official would understand that what [she] is doing violates that right." *Ford v. Anderson County*, 102 F.4th 292, 307 (5th Cir. 2024) (per curiam) (citation modified).

An official is entitled to qualified immunity unless existing precedent "squarely governs" the conduct at issue. *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004). Generally, to make this showing, Balfour "must identify a case in which an officer acting under similar circumstances was held to have violated the Constitution, and explain why the case clearly proscribed the conduct of that individual officer." *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021) (citation modified) More recently, though, the Fifth Circuit has found that "[w]hile an exact case on point is not required, the confines of the officer['s] violation must be beyond debate." *Id.* (citation modified).

Balfour has not satisfied this standard. Within the summary judgment record, Balfour has not shown that Dr. Perry was personally involved in the alleged denial of adequate medical treatment or that Dr. Perry intentionally ignored her complaints. As pointed out by Dr. Perry, Balfour "fails to present a single case where a person (or one overseeing an office) responsible for setting outside medical appointments acts unconstitutionally when, as here, no request for an outside appointment [was] requested by Balfour's treating physician." [120] at 10–11; *see also Malacara*, 353 F.3d at 405. Balfour has not shown the Court that Dr. Perry violated a clearly established constitutional right.

12

Nor has Balfour shown that Dr. Perry's actions were unreasonable. When determining whether the conduct violated a clearly established right, the Court must determine whether the official's actions were "objectively reasonable in light of clearly established law." *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001). A defendant's acts are objectively reasonable "unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Id.* (citation modified). It is undisputed that Dr. Perry's only significant, personal interactions with Balfour were "scheduling and arranging transportation and security with outside medical providers for Balfour's mammograms." [120] at 16. Neither Dr. Perry nor anyone within the OMC ever "rejected a referral or failed to schedule one of Balfour's mammograms when requested by the prison physicians." *Id.* at 13. The record reflects that Balfour's actions, as raised in the [45] Amended Complaint, were objectively reasonable.

D.  Additional Discovery

In the midst of her summary-judgment briefing, Balfour, through counsel, insists she "requires discovery" to "determine whether" Dr. Perry displayed deliberate indifference. [115-3] ¶ 5. The Court construes the [115-3] Affidavit as the "functional equivalent of a Rule 56(d) motion" for additional discovery. [116] at 7–8 (citation modified); *see also Nationwide Mut. Fire Ins. v. Sea Breeze Condos.*, No. 1:10-CV-298, 2011 WL 1561014, at *2 (S.D. Miss. Apr. 22, 2011). And the Court denies the motion.

Federal Rule of Civil Procedure 56(d) is a viable procedural tool that "allows deferment when a defendant raises qualified immunity in a summary-judgment motion and supports it with record evidence." *Johnson v. Madison County*, No. 3:21-CV-335, 2022 WL 4110920, at *4 (S.D. Miss. Sept. 8, 2022). According to Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that . . . it cannot present facts essential to justify its opposition, the [C]ourt may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). This type of relief is "appropriate whenever outstanding discovery is necessary to any essential element of a plaintiff's case." *Smith v. BP Expl. & Prod., Inc.*, No. 23-30619, 2024 WL 3842571, at *3 (5th Cir. 2024) (per curiam). The nonmovant is required to "show (1) why [s]he needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *Id.* at *2. The discovery "must be sufficient to defeat the summary judgment motion." *Id.* at *3. And a district court holds broad discretion in making this determination—discretion that will not ordinarily be disturbed. *See id.* at *2.

"Under most circumstances, [Balfour's] prayer for discovery would be easily granted." *Johnson*, 2022 WL 4110920, at *2. But Dr. Perry asserts qualified immunity. *See* [110] at 2. And "qualified immunity is an immunity from suit rather than a mere defense to liability . . . ." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation modified). "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."

14

*Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation modified). So before limited discovery is permitted, Balfour "must assert facts that, if true, would overcome that defense." *Hutcheson v. Dallas County*, 994 F.3d 477, 481 (5th Cir. 2021).

She has not. Balfour seeks discovery on "several key issues central to her claims, including [Dr. Perry's] oversight responsibilities, her involvement in healthcare standards enforcement, and her role in the approval of off-site referrals." [115-3] ¶ 5.[8] According to her, "[s]uch discovery is necessary to determine whether [Dr. Perry] disregarded [Balfour's] serious medical needs, constituting deliberate indifference." *Id.* ¶ 5.

But these matters Balfour seeks discovery on are not in her [45] Amended Complaint; they are instead related to allegations she primarily raises in her [115] Response and her [116] Memorandum. *See* [116] at 2, 6–11. Specifically, Balfour newly asserts that Dr. Perry, individually, was "tasked with approving off-site referrals, enforcing healthcare standards, implementing corrective actions, and monitoring quality control . . . ." *Id.* at 2.[9] Balfour also mentions that because Dr.

---

[8] The requested materials include: "[d]ocumentation and communications related to [Dr.] Perry's role in approving or denying off-site referrals for [Balfour]," "[r]ecords of compliance audits, corrective action plans, and quality control reports for [Wexford and Centurion] under MDOC's contracts to address whether [Dr.] Perry enforced MDOC's healthcare standards, including known deficiencies impacting [Balfour's] health," and "[m]ortality and morbidity review documents and any related correspondence to assess whether [Dr.] Perry took necessary actions to prevent or respond to serious medical incidents, including the delay in [Balfour's] cancer diagnosis." [115-3] ¶ 6.

[9] The [120] Reply correctly notes: "Balfour's claim that Dr. Perry was tasked with approving off-site referrals is the only claim from her [116] [M]emorandum that could fall within the allegations of the [45] Amended Complaint. . . . Dr. Perry's [OMC] approved all off-site referrals requested by Balfour's treating doctors." [120] at 5 n.1; *see also* [45] ¶ 61.

15

Perry failed to meet these contractual obligations, she suffered "a prolonged and painful delay in her cancer diagnosis . . . ." [116] at 2.

"A properly pleaded complaint must give fair notice of what the claim is and the grounds upon which it rests." *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (citation modified). So "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citation modified). The Court has addressed Balfour's allegations against Dr. Perry contained within the operative [45] Amended Complaint; the Court will not address any of Balfour's allegations raised for the first time in her [115] Response or [116] Memorandum. *See also* [120] at 4–7.

That aside, Balfour still does not explain how the additional discovery would defeat summary judgment. Although Rule 56(d) motions for additional discovery are broadly favored and liberally granted, one "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citation modified). Rather, again, to win relief, Balfour "must show (A) that additional discovery will create a genuine issue of material fact. Then she must show (B) that she diligently pursued discovery." *Bailey v. KS Mgmt. Servs., L.L.C.*, 35 F.4th 397, 401 (5th Cir. 2022) (per curiam) (citation modified). More specifically, Balfour "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable

time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (citation modified).

Balfour sets forth no such thing. Because she does not specifically show how the sought material will help her bear her summary judgment burden, within a reasonable time frame, the Court declines to grant Balfour additional discovery. *See Raby,* 600 F.3d at 561 (noting "a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand [the] motion" (citation modified)).

IV. Conclusion

This Court has considered all arguments. Those not addressed in this Order would not have changed the outcome of this Court's decision. For the reasons stated, the Court GRANTS Dr. Perry's [109] Summary Judgment Motion. Balfour's claims against Dr. Perry are DISMISSED with prejudice.

The Court also finds that this action presents more than one claim for relief and involves multiple parties. The Court expressly determines that there is no just reason for delay in directing entry of final judgment as to all claims asserted against Dr. Perry. Pursuant to Federal Rule of Civil Procedure 54(b), the Court directs and ORDERS that a Final Judgment is entered as to the claims against Dr. Perry.

Balfour's counsel shall promptly notify the Magistrate Judge of this decision

and shall submit a proposed order lifting the stay within seven days of the ruling.

SO ORDERED, this 3rd day of June, 2025.

s/ *Kristi H. Johnson*  
UNITED STATES DISTRICT JUDGE