## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**SHIRLEY BALFOUR, AS EXECUTRIX**      **PLAINTIFFS**
**OF THE ESTATE OF SUSIE ANNIE BALFOUR,**
**DECEASED; and**
**DUWAN DARNELL BALFOUR, INDIVIDUALLY,**
**AND ON BEHALF OF THE WRONGFUL DEATH**
**BENEFICIARIES OF SUSIE ANNIE BALFOUR,**
**DECEASED**

**V.**         **CAUSE NO. 3:24-cv-93-KHJ-MTP**

**VITALCORE HEALTH STRATEGIES, LLC;**    **DEFENDANTS**
**WEXFORD HEALTH SOURCES, INC.;**
**CENTURION OF MISSISSIPPI, LLC;**
**MOHMED EL ZEIN AHMED, M.D.,**
**JOHN DOES 1-10 (OWNERS/OPERATORS),**
**JOHN DOES 11-50 (NURSES), JOHN DOES 51-100**
**(DIRECT CARE WORKERS), JOHN DOES 101-110**
**(PHYSICIANS), JOHN DOES 111-125 (OTHER**
**INDIVIDUALS AND/OR OTHER ENTITIES CAUSING**
**OR CONTRIBUTING TO CAUSING INJURIES)**

---

### NOTICE TO TAKE RULE 30(b)(6) DEPOSITION OF
### VITALCORE HEALTH STRATEGIES, LLC

---

**PLEASE TAKE NOTICE**, Plaintiff Shirley Balfour, et al., by and through the undersigned counsel, and pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, will take the telephonic deposition of the designated representative(s) of Defendant VitalCore Health Strategies, LLC on April 1, 2026 beginning at 9:00 a.m. and continuing day to day until completed, before a court reporter or other officer authorized by law to take depositions, and recorded by audiovisual and stenographic means. The deposition will be conducted via Zoom and may be joined by all participants at the following link:

https://us04web.zoom.us/j/75163454358?pwd=hup2aWygXXgJVLZauA45b17wT3bwRP.1

Pursuant to FRCP 30(b)(6), VitalCore Health Strategies, LLC is required to designate and fully prepare one or more officers, directors, managing agents, or other persons, who shall testify on behalf of Defendant as to matters known or reasonably available to VitalCore Health Strategies, LLC, concerning the matters of inquiry set forth below.

Unless otherwise stated, the relevant time period for the topics below is October 6, 2020, through the present.  Where necessary to explain policies, decisions, and continuity of care, the witness may also testify regarding events immediately before and after that period to the extent they bear on the topics described.  Defendant will fully prepare to testify regarding the following designated matters of inquiry, and as to such information that is known or reasonably available to Defendant's organization:

### DEFINITIONS AND INSTRUCTIONS

- "CMCF" means the Central Mississippi Correctional Facility.

- "Decedent" means Susie Annie Balfour a/k/a Susan Ann Balfour.

- "Off-site care" means medical care, diagnostic testing, imaging, procedures, hospitalization, or consultation provided outside an MDOC facility, including services provided by third-party physicians or medical providers.

- "Referral" means any request, order, recommendation, or process to obtain off-site care and/or specialty consultation, including follow-up imaging (e.g., 6-month or annual mammograms), ultrasounds, biopsies, oncology consultations, and related diagnostic testing.

- For any topic that references "policies" or "procedures," the testimony should address both (a) written policies/protocols and (b) actual practices/customs at CMCF during the relevant period.

2

- For each topic, the witness should be prepared to identify the roles/titles responsible for implementing the relevant process and the locations/systems where related records are maintained.

## DOCUMENTS AND MATERIALS

The designated representative(s) should be prepared to testify regarding: (1) the documents, data sources, and other materials reviewed in preparation for the deposition; (2) the custodians and search/collection steps used to locate those materials; and (3) the manner in which responsive information is maintained (paper files, EHR, shared drives, email, vendor portals, spreadsheets/logs, or otherwise).

Pursuant to Fed. R. Civ. P. 30(b)(2) and 34, Plaintiffs request that the representative(s) produce at the deposition (and, to avoid delay, no later than fourteen (14) days before the deposition) the non-privileged documents and materials reasonably necessary to prepare the witness to testify on the topics below, including without limitation: applicable policies/protocols; organizational charts and job descriptions; contracts and amendments; referral forms and tracking logs; training materials; and CQI/audit materials, to the extent not previously produced.

## MATTERS OF INQUIRY

The representative(s) should be prepared to discuss the following matters:

1) **Corporate organization, decision-making, and lines of authority (CMCF; Oct. 6, 2020–present).**

   a) Organizational charts (corporate/regional/site) and chain of command for medical decision-making at CMCF.

b) Identification of positions responsible for: (i) off-site/specialty referrals; (ii) diagnostic imaging follow-up; (iii) review of outside reports; (iv) CQI/peer review.

c) The role of MDOC officials (Specialty Care Coordinator, Chief Medical Officer, facility administration) in off-site referrals and how VitalCore communicated with them.

2) **Staffing, credentialing, supervision, and training at CMCF (Oct. 6, 2020–present).**

a) Staffing models and actual staffing (physicians, mid-levels, nurses, and other clinical staff), including vacancies and the impact on access to care.

b) Credentialing and verification of licensure for staff providing care at CMCF.

c) Training/orientation regarding sick-call triage, referral submission, tracking pending follow-ups, and communication of abnormal results to inmates.

3) **Medical records and data systems used at CMCF (Oct. 6, 2020–present).**

a) The EHR/medical record systems used during VitalCore's tenure, including any transition/migration from prior systems and any later EHR changes.

b) How outside radiology/consult reports are received, logged, routed for provider review, and entered into the EHR/medical record.

c) Any reminders/notifications/flags/ticklers or other tools used to prompt follow-up imaging or specialty visits.

4) **Policies and practices for breast-cancer screening and follow-up for female inmates (CMCF; Oct. 6, 2020–present).**

a) Criteria for screening mammography (age/risk factors) and frequency of screening.

b) Protocols for responding to abnormal mammogram findings, including recommended follow-up intervals (e.g., 6-month follow-up), diagnostic mammography, ultrasound, biopsy, and oncology referral.

c) How follow-up imaging is ordered, scheduled, tracked, and documented.

5) **Sick-call, triage, and response to inmate requests for diagnostic imaging and follow-up (CMCF; Oct. 6, 2020–present).**

a) How sick-call requests are submitted, triaged, scheduled for provider evaluation, and documented.

b) How requests for follow-up mammograms/diagnostic imaging are processed when an inmate is told she needs repeat imaging or additional testing.

c) Escalation paths for unresolved or delayed referrals (including involvement of supervisors, facility administration, and/or MDOC).

6) **Off-site care referrals, appointment management, and follow-up tracking (CMCF; Oct. 6, 2020–present).**

a) The end-to-end process for initiating an off-site referral, securing any required approvals, scheduling, and coordinating transport/security.

b) How VitalCore tracks pending referrals and ensures completion, including responsibilities of any referral coordinators or corporate off-site management team.

c) Management of off-site appointments and hospitalizations, and any role in managing off-site claims or billing processes as between VitalCore and MDOC.

d) Receipt of specialty consult notes and implementation of consultant orders (including documentation and communication of non-routine follow-up orders).

7) **Processing and implementation of third-party provider orders, recommendations, and discharge instructions (CMCF; Oct. 6, 2020–present).**

a) How VitalCore personnel evaluate and act on outside findings/diagnoses and recommendations, including recommendations for mammograms on an annual, biannual,

or more frequent basis.

b) Who has responsibility to review outside results, enter orders, schedule follow-up care, and document the steps taken.

c) How VitalCore documents and communicates follow-up requirements to nursing/medical staff and to the inmate.

8) **Notification of inmates regarding test results and follow-up recommendations (CMCF; Oct. 6, 2020–present).**

a) Policies/practices for notifying inmates of abnormal or "positive" results and recommended next steps.

b) Documentation of notification, education, consent/refusal, and any inmate declinations or missed appointments.

9) **Referral-tracking tools, logs, dashboards, and reports (CMCF; Oct. 6, 2020–present).**

a) Any written/electronic tracking system(s), log(s), spreadsheet(s), dashboards, registries, calendars, or other mechanisms used to monitor pending referral(s) and follow-up(s) for inmate medical care.

b) The fields captured, who maintains the tool, how it is supervised/audited, and how overdue referrals are escalated.

10) **Continuous Quality Improvement, audits, and corrective actions (CMCF; Oct. 6, 2020–present).**

a) CQI/peer review processes addressing delays in diagnosis, delayed specialty referrals, delayed imaging, or failures to follow up abnormal studies.

b) Any audit reports, meeting minutes, corrective action plans, and communications with MDOC regarding referral timeliness or diagnostic follow-up.

11) **Care and treatment of Susie Annie Balfour during VitalCore's period (Oct. 6, 2020–present).**

   a) All screening/diagnostic imaging (including mammograms), abnormal findings, recommended follow-ups, and resulting actions/referrals during the VitalCore period.

   b) Requests by Ms. Balfour for follow-up imaging or evaluation (including via sick-call requests or other communications), and VitalCore's responses and documentation.

   c) Any delays in scheduling/completing follow-up imaging or specialty consultation and the reasons for such delays (approval, transport, staffing, documentation, transfer between facilities, etc.).

12) **Transition from Centurion to VitalCore and continuity of care (Oct. 2020).**

   a) Steps taken at the start of VitalCore's tenure to obtain medical records, referral logs, and pending specialty appointments from the prior contractor and/or MDOC.

   b) Processes to ensure pending referrals and follow-up studies were preserved in the transition, including for Ms. Balfour.

13) **Contractual duties, performance, and MDOC oversight (Oct. 6, 2020–present).**

   a) VitalCore's contractual duties to provide on-site medical care at CMCF and to coordinate/manage off-site care, including the referral and tracking process.

   b) Any provisions (including incorporated provisions from prior MDOC healthcare agreements) addressing specialty referrals, follow-up tracking, and notification of positive results, and how VitalCore implemented them.

   c) MDOC oversight/approval of VitalCore policies and the role of the MDOC Chief Medical Officer or designee in approvals/denials.

14) **VitalCore's discovery responses and document collection in this case.**

a) The steps taken to locate, collect, and produce documents/ESI related to Ms. Balfour's care and the referral-tracking process.

b) Identification of custodians, systems searched, and any limitations encountered (e.g., legacy systems, archived data).

**THIS** the 16th day of March 2026.

_____
GEORGE F. HOLLOWELL, JR.
ANDREW F. TOMINELLO
JOSEPH A. MURPHY

**Of Counsel:**
HOLLOWELL LAW FIRM
P.O. Box 1407
Greenville, MS 38702-1407
Telephone: 662-702-5330
Facsimile: 662-702-5142
Email: gfh@hollowelllawfirm.com
        aftominello@gmail.com

SMITH MURPHY LAW
2704 West Oxford Loop, Ste. 116
Oxford, MS. 38655
Telephone:  662-832-7879
Facsimile:  662-510-0360
Email:  joseph@smithmurphylaw.com

## CERTIFICATE OF SERVICE

I, Joseph A. Murphy, attorney for Plaintiffs, Shirley Balfour, et al., do hereby certify that on this day I filed the above and foregoing document using the Court's ECF system which sent notification of such filing via e-mail to all counsel of record.

This, the 16th day of March 2026.

_____
JOSEPH A. MURPHY

8