**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**SUSIE ANNIE BALFOUR, as Executrix of the
Estate of Susie Annie Balfour, and
DUWAN DARNELL BALFOUR, individually
and on behalf of the wrongful death beneficiaries**                    **PLAINTIFFS**

**v.**                                                              **CIVIL ACTION NO. 3:24-cv-93-KHJ-MTP**

**JACKSON HMA, LLC, ET AL.**                                        **DEFENDANTS**

**ORDER**

THIS MATTER is before the Court on the Motion to Strike [320] filed by Defendant

Centurion of Mississippi, LLC ("Centurion").  In the Motion [320], Centurion requests that the

Court strike Plaintiffs' supplemental responses to Centurion's first set of interrogatories and

requests for production of documents.  Having considered the parties' submissions, the record,

and the applicable law, the Court finds that the Motion to Strike [320] should be GRANTED in

part and DENIED in part.

**BACKGROUND**

The primary issue before the Court is whether to strike Plaintiffs' disclosure of more than

$1.7 million in alleged medical expenses claimed as part of their damages in this action, which

arise from Susie Annie Balfour's battle with breast cancer.  Ms. Balfour was incarcerated with

the Mississippi Department of Corrections for 33 years. *See* Complaint [1] at 8.  Ms. Balfour

claimed her cancer resulted from "clean[ing] the prison with chemicals known to cause, or to

contribute to causing, breast and other cancers without any protective equipment." *Id*.  She also

claimed that doctors, nurses, prison staff, and hospitals "failed to recognize or outright ignored

the presence of suspicious masses, and failed to conduct, order or refer her for additional

1

diagnostic examinations and/or procedures to confirm or deny presence of breast cancer." *Id*. at 9.

On February 14, 2024, Ms. Balfour filed this action against these doctors, nurses, prison staff, and hospitals.  Ms. Balfour served her initial disclosures under Fed. R. Civ. P. 26(a)(1) on June 18, 2024, prior to the case management conference. *See* Notice [77].  As to her computation of damages, which is required under Rule 26(a)(1)(iii), Ms. Balfour provided:

> Plaintiff is asserting claims for compensatory damages arising from or related to the present medical treatment she is currently receiving due to or as a result of Defendants' negligence, all future medical treatment she will require due to or as a result of Defendants' negligence, and loss of chance and/or diminished life expectancy.  Plaintiff is also asserting claims for pain and suffering in an amount to be determined by a jury.  Plaintiff is asserting a claim for punitive damages in an amount to be determined by a jury.  Lastly, Plaintiff is asserting a claim for nominal damages in amount to be determined by a jury.  As Plaintiff has not yet received all the bills, charges, and expenses related to the medical treatment she has received since her release from the custody of the Mississippi Department of Corrections, she will supplement her computation of damages during the course of discovery.

[320-1] at 4-5.

The Court entered a Case Management Order [91] on July 11, 2024, beginning the discovery period and setting the case deadlines and the trial of this matter.  Centurion served its first set of interrogatories and requests for production of documents on September 5, 2024, requesting from Ms. Balfour, *inter alia*, a description of all damages and the production of all documents concerning damages. *See* [320-2] at 4-5, 8.

However, on October 25, 2024, before Ms. Balfour responded to the discovery requests, the Court suspended the case deadlines and stayed discovery because Defendant Dr. Gloria Perry filed a Motion for Summary Judgment [109] raising qualified immunity as a defense. *See* Order [114].  On June 5, 2025, after dismissing Ms. Balfour's claims against Dr. Perry, the Court lifted the stay of discovery and entered an Amended Scheduling Order [153].

Ms. Balfour responded to Centurion's discovery requests on August 1, 2025.  In response to Centurion's interrogatory seeking a description of all damages, Ms. Balfour stated that she was seeking, among other things, "damages for her past, present, and future medical expenses," but she did not identify any medical expenses or provide a computation of damages. *See* [320-3] at 7-8.  Instead, she "reserved" the right to supplement her response. *Id*. at 8.  In response to the request for documents concerning damages, Ms. Balfour stated she "is requesting certified copies of her medical billing records from her providers and will supplement her response to this Request upon receipt of the same." *Id*. at 28.

Ms. Balfour died on August 1, 2025. *See* Suggestion of Death [171].  Then, on August 14, 2025, the Court suspended the case deadlines pending the filing and granting of a motion for substitution of party. *See* Order [179].

On November 6, 2025, after the parties were substituted,[1] the Court entered an Order [189] resetting the trial of this matter and setting new case deadlines, including a January 15, 2026, deadline for Plaintiffs to designate experts, a February 16, 2026, deadline for Defendants to designate experts, and an April 15, 2026, discovery deadline.

On January 15, 2026, Plaintiffs designated four retained expert witnesses (Renee FallHowe, M.D., Carl Freter, M.D., Julie Miller, M.D. and Bill Brister, Ph.D) and 34 treating physicians as non-retained expert witnesses. *See* [320-4].  As for the retained expert witnesses' reports, Dr. FallHowe's concerns the medical care provided to Ms. Balfour, Dr Freter's concerns disease progression and the timing of Ms. Balfour's diagnosis, Dr. Miller's concerns Ms.

---

[1] Shirley Balfour, the executrix of the estate of Susie Balfour, was substituted as Plaintiff on November 6, 2025, and on February 12, 2026, Duwan Balfour, individually and on behalf of the wrongful death beneficiaries, was added as a Plaintiff. *See* Order [188]; Amended Complaint [260].

Balfour's mammographic history, and Dr. Brister's concerns the value of lost earnings and household services. *See* [320-5].  Concerning the treating physicians, Plaintiffs provided the following:

> Each named physician may testify regarding facts learned and opinion formed during the course of providing medical care and treatment to Ms. Balfour, including their diagnosis, treatment, or care of Ms. Balfour, as well as opinions regarding her condition, prognosis, and causation to the extend such opinions were formed with and as part of their treatment and care.

*See* [320-4] at 4.

On March 18, 2026, Plaintiffs moved for a 60-day extension of the discovery deadline. *See* Motion [278].  Finding that Plaintiffs had not provided good cause for the requested extension, the Court extended the discovery deadline by two weeks to April 29, 2026, and explained: "The parties should also note that this action has been pending for more than two years, and the Court desires that the case proceed expeditiously and expects the parties and counsel to proceed accordingly." *See* Order [279].

The discovery deadline ran on April 29, 2026.  The next day, Plaintiffs supplemented their response to Centurion's interrogatory seeking a description of all damages with the following:

> Medical expenses incurred as a result of delayed diagnosis and treatment of metastatic breast cancer, including but not limited to diagnostic imaging, pathology and biopsy services, oncology consultations[,] systemic therapy and medications, hospitalizations, and palliative and hospice care in the amount of $1,749,166.67. The reasonableness and necessity of those medical expenses will be testified to [by] those persons identified in Plaintiff's Rule 26(a)(2) Expert Witness Disclosures.

*See* [320-6] at 7.  Plaintiffs also supplemented their response to an interrogatory seeking information about their witnesses by stating they may call their treating-physician expert witnesses "to offer testimony regarding the reasonableness and necessity of the treatment that

was rendered to her and the reasonable value of such medical treatment which was necessitated by the constitutional violations and/or tortious conduct of Defendants." *Id*. at 3.

Plaintiffs also supplemented their document production but did not produce any medical bills. *See* [320-7].

On May 7, 2026, Centurion moved to strike Plaintiffs' supplemental responses to its interrogatories and requests for production of documents arguing they are untimely and prejudicial. *See* Motion [320].  Plaintiffs filed a Response [336] [337], and Centurion filed a Reply [339].

While Centurion asks generally that the Court to strike all of Plaintiffs' supplemental responses as untimely, it only provides argument for striking Plaintiffs' supplemental responses concerning damages in the form of medical expenses.  Accordingly, the Court will only consider whether to strike Plaintiffs' supplementation concerning such damages and will deny any other relief requested.

**ANALYSIS**

As part of the initial disclosures, "a party must, without awaiting a discovery request, provide to the other parties: . . . a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . ." Fed. R. Civ. P. 26(a)(1)(A)(iii).  Here, Plaintiffs were required to serve their initial disclosures by July 3, 2024. *See* Order [66] at 1.

Additionally, "[a] party must make [expert] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).  Local Rule 26 provides that a "party must

make full and complete disclosures as required by Fed. R. Civ. P. 26(a) and L.U. Civ. R. 26(a)(2)(D) no later than the time specified in the case management order." L.U. Civ. R. 26(a)(2).  Plaintiffs' expert designation deadline ran on January 15, 2026. *See* Order [189].

Important to the issues presented here, parties must also supplement their disclosures and discovery responses when necessary.

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1).

Pursuant to the Local Rules, "[a] party is under a duty to supplement disclosures at appropriate intervals under Fed. R. Civ. P. 26(e) and *in no event later than the discovery deadline established by the case management order*." L.U. Civ. R. 26(a)(5) (emphasis added). Furthermore, "[t]he discovery deadline is that date by which all responses to written discovery including supplementation of responses, required by the Federal Rules of Civil Procedure must be made . . . ." L.U.Civ. R. 26(b)(1).

The Federal Rules of Civil Procedure provide directions in the event a party fails to properly disclose information.  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[2]

To determine whether to exclude evidence that was not properly or timely disclosed, the Court considers the following factors: (1) the explanation for the failure to disclose the evidence; (2) the importance of the evidence; (3) potential prejudice in allowing the evidence; and (4) the availability of a continuance to cure such prejudice. *King v. King*, 117 F.4th 301, 307 (5th Cir. 2024).

As for an explanation, Plaintiffs first point out that they served their supplementation only a few minutes after the discovery deadline and argue that this short delay does not justify the exclusion of the recently produced evidence.  Plaintiffs, however, mischaracterize the delay. It was not a delay of a few minutes; it was a delay of nearly two years.  Plaintiffs' initial disclosures, including their computation of damages, were due on July 3, 2024. *See* Order [66] at 1.  Plaintiffs did not provide their computation of damages until April 30, 2026 (after the discovery deadline and some 20 months after their initial disclosures were due), and what Plaintiffs provided was not a supplement but their *initial* attempt at a computation of damages and new expert opinions regarding those damages.

In their "supplementation," Plaintiffs state that the medical expenses incurred amount to $1,749,166.67 and inform Defendants that their expert witnesses will testify concerning the reasonable value of the medical treatment.  Plaintiffs did not provide medical bills or explain how they arrived at $1,749,166.67 for medical expenses.

---

[2] This Rule further provides: "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1).

Plaintiffs only offer an explanation in response to the Motion to Strike [320]. The $1,749,166.67 figure, say Plaintiffs, was calculated not from medical bills but by applying Medicare reimbursement rates to the medical treatment documented in Ms. Balfour's medical records. *See* [337] at 5. According to Plaintiffs, they used this methodology because they were unable to obtain the medical bills from Ms. Balfour's medical providers despite their "diligent efforts to obtain them." *Id*.

If Plaintiffs are offering their failure to acquire medical bills as an explanation for failing to timely provide their initial disclosures, this is not sufficient justification. Plaintiffs do not explain what or when efforts were made to acquire Ms. Balfour's medical bills. Plaintiffs certainly did not use all of the remedies available to them under the Rules of this Court. For example, the record reveals that Plaintiffs did not move to compel the production of these documents or enforce any subpoena for them. Additionally, Plaintiffs offer no explanation why they did not timely disclose their Medicare reimbursement rate computation once it was apparent medical bills would not be used to support their medical damages claim.

This action was filed on February 14, 2024, and Plaintiffs had years to compute damages but failed to do so until after discovery closed.[3] Accordingly, Plaintiffs have failed to provide a reasonable justification for the untimely production of information concerning damages, and this factor weighs in favor of striking the supplementation. *See King*, 117 F.4th 307-08.

Turning to importance, the Court first notes that Plaintiffs' lengthy delay in disclosing their damage computation undermines any claim of its importance. But, Plaintiffs argue that

---

[3] It should be noted that medical treatment may have been ongoing throughout part of the discovery process. However, as Ms. Balfour died on August 1, 2025, any ongoing treatment ceased at the point, and Plaintiffs had about *nine months* to gather medical records before the close of discovery.

striking their supplementation would effectively eliminate "a central category of damages in a wrongful-death medical case." *See* [336] at 2.  Although striking the supplementation would not eliminate all categories of damages claimed by Plaintiffs, the Court recognizes that it may eliminate damages based on alleged expenses for medical care and finds that the factor of importance weighs against striking the supplementation.

The importance of evidence, however, "cannot singularly override the enforcement of local rules and scheduling orders." *King*, 117 F.4th at 307.  While Centurion does not contest the importance of the supplementation, it argues that the untimely supplementation, if not stricken, will cause significant prejudice.  The Court agrees.

For their part, Plaintiffs argue that Centurion would face no prejudice if their supplementation is not stricken.  After all, they produced Ms. Balfour's medical records and informed Defendants in their initial disclosures (served on June 18, 2024) that they were seeking damages for medical treatment and that the computation of damages would be supplemented. *See* [320-1] at 4-5.  Their discovery responses (served on August 1, 2025) also informed Defendants that Plaintiffs requested copies of Ms. Balfour's medical bills and would supplement upon receipt. *See* [320-3] at 28.

That Plaintiffs informed Defendants of the need to supplement disclosures does not relieve Plaintiffs of their responsibility to actually supplement in a timely manner.  And, it certainly did not put Defendants on notice that Plaintiff would attempt to compute their damages by applying the Medicare reimbursement rates to the medical treatment documented in Ms. Balfour's medical records.  As Centurion notes, the medical records do not provide a basis for determining whether the costs associated with medical services were reasonable, and Centurion

should not have to "piece[] together" Plaintiffs' damages calculation from medical records without corresponding bills. *See* [339] at 3.

The purpose of the discovery rules (and more specifically the disclosure requirements) is to eliminate unfair surprise. The untimely supplementation here constitutes an unfair surprise. Centurion is unable to rebut the Medicare reimbursement rate damages calculation because the discovery deadline has passed. Centurion will not have an opportunity to investigate the damages calculation, seek further discovery related to it, or obtain an expert opinion related to it. *See Thomas v. City of Laurel*, 2021 WL 2518210, at *5 (S.D. Miss. June 18, 2021).

Finally, the Court considers the availability of a continuance to cure any prejudice. Plaintiffs do not request a continuance, arguing that one is unnecessary because Centurion faces no prejudice. *See* [337] at 10. To the contrary, Centurion would be prejudiced as the Court just explained.

Permitting Plaintiffs' untimely supplementation would result in an expensive "do-over" of damages discovery and perhaps new expert discovery and/or reports. This action has been pending for well over two years, the trial has been reset multiple times, and on March 18, 2026, the Court provided this warning: "The parties should also note that this action has been pending for more than two years, and the Court desires that the case proceed expeditiously and expects the parties and counsel to proceed accordingly." *See* Order [279]. The Court also "reiterated its expectation that discovery be completed within the existing deadlines" during a discovery conference with the parties on March 31, 2026. *See* 3/31/2026 Minute Entry.

Moreover, when other factors support exclusion, the availability of a continuance is not controlling. "Otherwise, the failure to satisfy the rules would never result in exclusion, but only in a continuance." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883-84 (5th Cir.

2004); *see also Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990) ("Moreover, a continuance would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders.").

Having considered the appropriate factors, the Court finds that Plaintiffs' untimely production of information concerning damages based on medical expenses (whether as a supplement to their initial disclosures or their expert witness designations) is not harmless or substantially justified and that the Motion to Strike [320] should be granted to the extent it requests that the Court strike the production of information concerning damages based on medical expenses.

IT IS, THEREFORE, ORDERED that the Motion to Strike [320] is GRANTED in part and DENIED in part as set forth herein.

SO ORDERED this the 4th day of June, 2026.

s/Michael T. Parker
UNITED STATES MAGISTRATE JUDGE

11